IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| RONALD E. DOUDS, SR., | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18−cv−1144−JPG |
| | ) | |
| USA, | ) | |
| BOP MEDICAL PERSONNEL, | ) | |
| UNKNOWN DOCTOR, | ) | |
| HAROLD GILLIAN, | ) | |
| TIMOTHY ADESANYA, | ) | |
| MRS. BRAGGS, | ) | |
| OFFICER ROBINSON, | ) | |
| ERNESTO GAPASIN, and | ) | |
| DR. KRUSE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff is an inmate in the United States Penitentiary in Pekin, Illinois. A federal prisoner who seeks relief for the misconduct of federal agents has three options for obtaining relief in federal court. He may bring a suit against the United States under the Federal Tort Claims Act ("FTCA") for misconduct of federal agents that is considered tortious under state law. *Sisk v. United States*, 756 F.2d 497, 500 n.4 (7th Cir. 1985) (citing 28 U.S.C. §§ 1346(6), 2680). He may bring a suit against the agent for a violation of his constitutional rights under the theory set forth in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Id.* Or, he may bring both types of claims in the same suit. *See, e.g.*, *Ting v. United States*, 927 F.2d 1504, 1513 n. 10 (9th Cir. 1991). Plaintiff marked on his Complaint that he brings this action pursuant to the Federal Tort Claims Act. However, in an action under the FTCA, the United States of

1

America is the only proper defendant, and Plaintiff has named as defendants the United States along with various other federal officials. *See* 28 U.S.C. § 2679(b); *FDIC v. Meyer*, 510 U.S. 471 (1994). It is therefore apparent that he seeks to bring both FTCA and *Bivens* claims in this action, and his allegations will be considered accordingly. This action is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important,

"not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. This practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, improperly joined claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

## The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: doctors at Butner should have allowed Plaintiff to see a specialist and receive a diagnosis or treatment. (Doc. 1, p. 5). Harold Gilliam should have taken Plaintiff's complaints seriously and allowed him to see the on-site physician. *Id.* Timothy Adesanya "was negligent failing to do a meaningful medical screening and caused added pain and suffering while delaying proper diagnosis." *Id.* Dr. Doug Kruse ignored the surgical recommendation, prolonging Plaintiff's pain and suffering. *Id.* Mrs. Braggs "caused excess pain and suffering" by sending Plaintiff back to his unit while he was in obvious pain. *Id.* This prolonged his painful condition and delayed his diagnosis. *Id.* Officer Robinson failed to alert medical and delayed the treatment and diagnosis of Plaintiff. *Id.* Ernesto Gapasin delayed Plaintiff's surgery and ignored the recommendation of a neuro specialist, insisting instead on physical therapy. *Id.* This caused Plaintiff pain and suffering. *Id.*

Plaintiff was taken into federal custody on or about July 6, 2007. (Doc. 1, p. 7). Plaintiff

3

was experiencing pain and numbness in his lower right leg. *Id.* He was committed to Butner Medical Center in North Carolina where he had an MRI and physical therapy, along with a psychological examination. *Id.* Plaintiff was not aware of a spinal injury, he had no pain in his back, and he was led to believe that his leg pain and numbness in his foot came from an injury to his calf muscle. *Id.* Plaintiff's doctors said it was something pushing against a nerve in his leg but that Plaintiff would not be treated because he would not be at the facility for very long. *Id.* Plaintiff was returned to the custody of the court and sentenced on or about April 9, 2010. *Id.* The judge recommended that Plaintiff be incarcerated in a facility that could provide medical attention for his stomach, leg, and foot issues. (Doc. 1, pp. 7-8).

On or about June 1, 2010, Plaintiff arrived at Greenville Correctional Facility. (Doc. 1, p. 8). On or around December 15, 2010, Plaintiff saw Physician's Assistant Harold Gillian after losing "motor control in his right and falling injuring his elbow." *Id.* Plaintiff told Gillian that he had physical therapy and an MRI in Butner. *Id.* Gillian checked the computer and told Plaintiff that he did not see a record of it and that Plaintiff was not at Butner. *Id.* Plaintiff believes that the Bureau of Prisons failed to adequately update and share medical records and information. *Id.* Plaintiff explained that he had experienced cold and wet feelings and hot and tingling in his foot and leg. *Id.* He told him that he felt this before while he was at Butner for a psychological evaluation. *Id.* Gillian asked Plaintiff if he was sure he was not experiencing another psychotic episode and laughed. (Doc. 1, p. 9). Gillian asked if it was numb, to which Plaintiff responded no. *Id.* Gillian also asked if Plaintiff could move it, and Plaintiff moved it. *Id.* Gillian told Plaintiff to purchase antifungal cream from the commissary before he left. *Id.*

On or about February 15, 2011, Plaintiff saw Gillian again. *Id.* While discussing his stomach medication, Plaintiff showed Gillian a copy of his judgment and the judicial

4

recommendation for his medical care. *Id.* Around October 27, 2011, Plaintiff fell again after losing motor control in his lower right extremity. *Id.* He crushed his finger and broke it. *Id.* The next day, Plaintiff saw Gillian, explained his fall, and showed him his judicial recommendation again. (Doc. 1, pp. 9-10). Plaintiff was treated for his broken finger and was told that if he lost muscle control again or if there was a change in his condition, he should report to medical. (Doc. 1, p. 10). Plaintiff believes Gillian willfully disregarded his complaints of leg pain and should have given him to opportunity to consult with a physician for diagnosis. *Id.*

On or about November 30, 2011, Plaintiff felt a pull in his lower back. *Id.* On December 1, 2011, Plaintiff awoke with a backache. *Id.* While preparing to go to sick call, Officer Massa told Plaintiff to report for urinalysis testing. *Id.* Plaintiff asked if he could go to medical first, and Massa responded that they could put him in segregation if he refused to go to testing. *Id.* At urinalysis testing, Plaintiff asked Robinson to call medical and ask if he could attend sick call after his testing was completed. (Doc. 1, p. 11). After testing, Robinson told Plaintiff to go over to medical. *Id.* At medical, Plaintiff told Mrs. Braggs that he was at testing before coming to sick call. *Id.* She told him that he needed to return to the unit and have his unit officer call him over. *Id.* Plaintiff told her his back was hurting, and she told him that he did not look that bad. *Id.* "Upon return, Mr. Massa called medical and told Plaintiff medical said for him to return tomorrow." *Id.*

On or about December 2, 2011, Plaintiff awoke experiencing pain down his left leg and in his lower back. (Doc. 1, p. 12). Another inmate contacted Officer Massa, who called medical. *Id.* Two inmate workers came to get Plaintiff with a wheelchair. *Id.* Inmate Jefferson tried to lift Plaintiff out of bed, but when Plaintiff yelled in pain, Jefferson placed him back on the bed. *Id.* Plaintiff believes the use of inmate medical workers without a stretcher to stabilize his spine

5

was improper and negligent, causing excess pain and suffering. *Id.*

At medical, Nurse Kelly gave Plaintiff Tylenol-3 Codeine pills, ordered X-rays, and asked about Plaintiff's range of motion. (Doc. 1, p. 13). Plaintiff told Kelly that he thought he was losing use of his leg and would like to see a doctor. *Id.* Kelly told Plaintiff that the doctor was not there and would not be available until the next week. *Id.* When Plaintiff insisted, Kelly told Plaintiff he would be placed in a segregated housing unit for disciplinary inmates if he did not leave medical. *Id.* Plaintiff left on crutches, struggling to ambulate. *Id.* Plaintiff was later unable to get back up once his Codeine pills wore off. *Id.* "The lack of medical staff, use of inmate personnel, [and] the increased workload caring for both populations (medium FCI prison and low/camp population) created [an] understaffed, overworked system contributing to delayed medical treatment, delayed diagnosis, and prolonged pain and suffering." *Id.*

On or about Saturday December 3, 2011, Plaintiff could not get out of bed. (Doc. 1, p. 14). Officer Massa called medical, but no one responded. *Id.* Officer Massa told Plaintiff she might be doing pill line at the camp across the street, and he later told Plaintiff that the nurse was preparing for the pill line and would get to him if she had time later. *Id.* Around 3:30 p.m., Officer Pierce told Plaintiff he was wanted in food service for the 4:00 p.m. out-count. *Id.* Mr. Pierce called to have Plaintiff removed from the count, and he later called medical to inform them that Plaintiff could not get out of bed and had not been to eat. *Id.* No one answered. *Id.*

At about 4:30 p.m., Plaintiff's "kidneys gave way and he urinated in his bed." *Id.* At about 8:30 p.m., Inmate Alderson checked on Plaintiff, picked him up and placed him in a plastic chair, changed his bedding, and gave him a water bottle in which to urinate. (Doc. 1, pp. 14-15). On or about December 4, 2011, Plaintiff sent for Inmate DeJesus. (Doc. 1, p. 15). DeJesus came to the unit, prepared food because Plaintiff had been unable to go to chow, and made a bucket of

warm water so Plaintiff could take a sponge bath to remove the urine stench. *Id.* Plaintiff believes there should have been some protocol to allow feeding and care of immobilized inmates and delivery of pain medications or assistance to pill line via wheelchair. *Id.*

On or about December 5, 2011, the unit officer called medical and the same two inmates responded. *Id.* P.A. Adesanya spoke to Plaintiff in the inmate lobby. *Id.* Plaintiff explained he was called to urinalysis testing, he woke up in pain Friday morning, and that he had not been able to get out of bed, or go to chow or pill line. (Doc. 1, pp. 15-16). Plaintiff tried to explain that he had a couple of falls and showed Gillian his judgment and commitment and the recommendations with them. (Doc. 1, p. 16). He handed Adesanya his judgment and commitment, and Adesanya looked at the papers, crumbled them up, and threw them at Plaintiff. *Id.* He told Plaintiff that he did not care what a judge in Ohio said because he was in Illinois now. *Id.* Adesanya then asked Plaintiff why he did not come to pill line. *Id.* He told Plaintiff to "keep the wheel chair and quit being such a big baby and get to pill line." *Id.* Two inmates picked up Plaintiffs papers and pushed him back to the cellblock. *Id.* Plaintiff believes Adesanya was unprofessional and should have done a meaningful examination of Plaintiff in an exam room. (Doc. 1, p. 17). This "delayed proper diagnosis, [and] prolonged an obviously painful condition." *Id.*

Around December 8, 2011, Plaintiff spoke with P.A. Elizabeth Mills. *Id.* He was then sent to Greenville Regional Hospital. *Id.* A CT Scan revealed "at L4-5 minimal disc bulge without disc herniation . . . and at L5-S1 posterior disc/osteophyte complex . . . mass effect upon thecal sac. This may cause symtomology [*sic*] with bilateral S1 nerve roots." (Doc. 1, pp. 17-18). Plaintiff was sent to Springfield Clinic, where he saw Dr. Margaret MacGregor. (Doc. 1, p. 18). She recommended surgery for Plaintiff, noting that Plaintiff was symptomatic from both of

his disc protrusions and that she did "not expect his foot drop to improve without surgical intervention." *Id.* On or about March 9, Defendant Gillian told Plaintiff he would be transferred and that the doctors wanted to see if physical therapy would restore his mobility before they tried surgery. *Id.* Plaintiff believes they ignored the surgical recommendation, causing prolonged pain and suffering. *Id.*

Plaintiff was transferred approximately April 8. (Doc. 1, p. 19). He believes his primary caregivers at the Federal Medical Center in Springfield,[1] including Ernesto Gapasin, ignored the specialist's recommendation. *Id.* "Plaintiff made several requests for records and attempted to send records to the court, but [he] was given mismatched records or incomplete records." *Id.* Plaintiff also attempted to bring an informal complaint on the issue, and he "was shipped to his present location." *Id.* Plaintiff seeks monetary damages. (Doc. 1, p. 6).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 4 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Defendant United States, by and through the negligence of the other defendants, is liable under the FTCA for the inadequate treatment of Plaintiff's serious medical needs involving various back and foot issues.

**Count 2 –** While Plaintiff was a pretrial detainee in federal custody, Defendant Unknown Doctor at Butner Medical Center showed deliberate indifference to Plaintiff's serious medical needs involving various back and foot issues.

**Count 3 –** Defendants Gillian, Adesanya, Braggs, Robinson, and Kruse showed deliberate indifference to Plaintiff's serious medical needs involving various back and foot issues while Plaintiff was incarcerated at Greenville

---

[1] Plaintiff appears to be referring to Springfield MCFP, the federal medical center in Springfield, Missouri, in the Western Missouri federal judicial district.

>           FCI, in violation of the Eighth Amendment.

**Count 4 –**    Defendant Gapasin showed deliberate indifference to Plaintiff's serious medical needs involving various back and foot issues while Plaintiff was at MCFP Springfield, in violation of the Eighth Amendment.

As discussed in more detail below, Count 3 will be allowed to proceed past threshold, Count 1 will be dismissed without prejudice, and Counts 2 and 4 will be severed from this action. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard. Further, to the extent Plaintiff sought to bring claims against individuals or entities not included in the case caption, these individuals or entities will not be treated as defendants in this case, and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption").

## Count 1 - FTCA

A plaintiff may not bring a suit under the FTCA unless he has first presented his claim to the appropriate federal agency and that agency has denied the claim. 28 U.S.C. § 2675(a). A plaintiff bringing a claim under the FTCA generally shows exhaustion by filing with his complaint a copy of the "final denial of claim" letter indicating that agency review has been completed and the individual may seek relief in court. In this case, Plaintiff's claims that certain Defendants committed the tort of medical negligence in connection with his back and foot issues might be brought under the FTCA. Though Plaintiff indicates that he filed Federal Tort Form 95-109 and that it was denied, he does not describe what he included in the form, nor does he claim that he pursued it through all levels to exhaust his administrative remedies. He has also failed to attach a final denial of claim letter to the Complaint.

Further, to the extent Plaintiff's FTCA claim is based on the negligence of federal

employees at Greenville FCI in Illinois, the applicable Illinois statute requires the plaintiff to file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. § 5/2-622(a). Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). Plaintiff has not filed the required certificate.

For these reasons, Plaintiff's FTCA claims under Count 1 for medical negligence by the individual Defendants shall be dismissed without prejudice.

### Counts 2 and 4 - Severance

Counts 2 and 4 are unrelated to one another and Count 3. Count 2 is against Defendant Unknown Doctor and stems from events that took place at FMC Butner in North Carolina, Count 3 is against various different defendants and arose largely at Greenville, and Count 4 is against Defendant Gapasin and stems from events that took place at MCFP Springfield. Consistent with the *George* decision and Federal Rules of Civil Procedure 18 and 21, the Court shall sever Count 2 into a separate action, and Count 4 into yet another action. New cases shall be opened with newly-assigned case numbers for those claims. A separate merits review shall be conducted in

10

the severed cases after they are opened and assigned to a judge. Plaintiff shall be assessed new filing fees for the severed cases.

### Count 3 – Deliberate Indifference

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Considering the allegations in the Complaint and the attached exhibits, Plaintiff has stated a claim against Gillian, Adesanya, Braggs, and Kruse at this stage. Plaintiff has not stated a claim against Robinson, however. Per the Complaint, Robinson sent Plaintiff to medical. There is no indication that Robinson knew Plaintiff would be turned away. The allegations therefore do not suggest deliberate indifference on the part of Robinson. Accordingly, Count 3 will be dismissed without prejudice against Robinson for failure to state a claim upon which relief may be granted, and it will proceed against Gillian, Adesanya, Braggs, and Kruse.

### BOP Medical Personnel

The complaint names BOP Medical Personnel as a defendant in this action. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). BOP Medical Personnel is not a single defendant, nor do allegations against it establish the individual

actions of any individual. BOP Medical Personnel will therefore be dismissed with prejudice from this action, though this dismissal is without prejudice to Plaintiff bringing a claim against individual medical personnel.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 3** shall **PROCEED** against **GILLIAN**, **ADESANYA**, **BRAGGS**, and **KRUSE** and is **DISMISSED** without prejudice as against **ROBINSON** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 1** is **DISMISSED** without prejudice for the reasons stated herein.

**IT IS FURTHER ORDERED** that **BOP MEDICAL PERSONNEL** is **DISMISSED** with prejudice from this action and **USA** and **ROBINSON** are **DISMISSED** without prejudice from this action for the reasons stated herein.

**IT IS FURTHER ORDERED** that **COUNT 2,** which is unrelated to the other claims in this action, is **SEVERED** into a new case against **UNKNOWN DOCTOR**.

**IT IS FURTHER ORDERED** that **COUNT 4**, which is unrelated to the other claims in this action, is **SEVERED** into a new case against **GAPASIN**.

The claims in the newly severed cases shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new cases, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1); and
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 5).

Plaintiff **will be responsible for an additional $350 filing fee** in each newly severed

case.[2] No service shall be ordered in the severed cases until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is Count 3*.

**IT IS FURTHER ORDERED** that Defendants **UNKNOWN DOCTOR** and **GAPASIN** are **TERMINATED** from **this** action with prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on **GILLIAN**, **ADESANYA**, **BRAGGS**, and **KRUSE**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **GILLIAN**, **ADESANYA**, **BRAGGS**, and **KRUSE** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[3] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

---

[2] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

[3] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

Defendants **GILLIAN**, **ADESANYA**, **BRAGGS**, and **KRUSE** are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings. Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under an obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 10, 2018**

s/J. Phil Gilbert
United States District Judge